UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-81157-Cannon/McCabe

ESSIE MAE WILLIAMS,
as Personal Representative of the Estate of
Cedric Levon Williams,

    Plaintiff,

v.

THE GEO GROUP, INC.,

    Defendant.
_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss ("Motion") (DE 25), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 38). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED** and that the Complaint be **DISMISSED WITHOUT PREJUDICE** with leave to file an Amended Complaint.

### I.   BACKGROUND

This is a civil rights case brought by the personal representative of the Estate of Cedric Levon Williams (the "Estate"), arising from Williams' death while incarcerated as an inmate in the Florida prison system, allegedly due to lack of medical care. The Complaint originally named as defendants the Florida Department of Corrections ("FDOC"), as well as The GEO Group, Inc. ("GEO"), the private company that operated the prison facility, pursuant to a contract with FDOC, where Williams was incarcerated at the time of his of death (DE 1).

The Complaint alleges, in general terms, that Williams suffered from high blood pressure and diabetes (DE 1 ¶ 12). In July 2016, and again in March 2017, Williams made requests for medical care to GEO related to his medical conditions (DE 1 ¶¶ 14-18). At some point, Williams' mother also made several calls to GEO's facility requesting that Williams be taken to the hospital (DE 1 ¶ 18). GEO prison officials ultimately took Williams to the hospital but only after it was too late to save his life (DE 1 ¶¶ 19-20). The Complaint alleges that Williams died at the hospital, but it does not indicate the cause or date of death (DE 1 ¶ 20).

The Complaint brings claims "pursuant to 42 U.S.C. §§ 1983 and 1988, the Eighth and Fourteenth Amendments to the United States Constitution" (DE 1 ¶ 2). It also refers to "negligent and/or grossly negligent practices by the medical providers" at GEO's facility (DE 1 ¶ 1). On September 8, 2023, the Estate voluntarily dismissed FDOC, leaving GEO as the only remaining defendant (DE 10). By way of this Motion, GEO seeks dismissal of all claims against it pursuant to Fed. R. Civ. P. 12(b)(6) (DE 25).

## II.    LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. DISCUSSION

GEO urges dismissal on multiple grounds, each of which the Court will address in turn.

#### A. Shotgun Pleading

GEO first urges dismissal of the Complaint for failure to comply with the Federal Rules of Civil Procedure with respect to pleading requirements (DE 25 at 13). The Court agrees and finds that the Complaint fails to satisfy Fed. R. Civ. P. 8(a)(2) and 10(b). As such, the Complaint constitutes an impermissible "shotgun pleading" and fails to give GEO "adequate notice of the claims against [it] and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Shotgun pleadings commonly suffer from one or more of the following deficiencies:

(1) they contain multiple counts, with each count adopting the allegations of all preceding counts, thereby causing each successive count to carry all that came before, and leaving the last count to be a combination of the entire complaint;

(2) they are replete with conclusory, vague, and immaterial allegations not obviously connected to any particular cause of action;

(3) they do not separate each cause of action into a different count; and

(4) they assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions.

*Id.*

The Complaint here suffers from deficiencies (3) and (4). The first two paragraphs of the Complaint refer to at least three different causes of action: a claim under 42 U.S.C. § 1983, a claim under 42 U.S.C. § 1988, and a claim for common law negligence (DE 1 ¶¶ 1-2). Exhibit A to the

3

Complaint then refers to claims under the Eighth Amendment, the Americans with Disabilities Act, and common law negligence (DE 1-1). Despite making references to these various claims and legal theories, the Complaint then fails to separate any of the causes of action into separately numbered "counts" as required by Fed. R. Civ. P. 10(b). As such, the Complaint leaves GEO confused as to the precise legal claims the Estate seeks to bring.

The Court therefore finds that the Complaint should be dismissed as a shotgun pleading. Given that the Estate has not had any previous opportunities to amend, the Estate should be given an opportunity to re-plead its claims by way of an Amended Complaint. The Amended Complaint should comply with the Federal Rules of Civil Procedure and should avoid the problems common to shotgun pleadings. It should separate the causes of action into separately numbered counts, with one legal theory per count, and one defendant per count, and it should comply with the *Iqbal/Twombly* pleading standards. *See Taylor v. Royal Caribbean Cruises Ltd.*, No. 20-22161-CIV, 2020 WL 3257988, at *1 (S.D. Fla. June 16, 2020) (collecting cases on shotgun pleadings and giving instructions for any future amended pleading).

    **B.**    **§ 1983 Liability Against GEO**

GEO next urges dismissal for failure to state a viable claim under 42 U.S.C. § 1983, which provides a remedy against "every person" who, under color of state law, deprives another of rights secured by the Constitution and laws of the United States (DE 25 at 5). When a private company like GEO contracts with the state to perform a function traditionally performed by the state, the private company acts under color of state law and may become liable under § 1983. *See Brown v. GEO Group*, No. 18-80026-CV, 2019 WL 13410738, at *5 (S.D. Fla. Aug. 28, 2019), *R. & R. adopted*, 2019 WL 13410737 (S.D. Fla. Oct. 2, 2019) ("The law is well established that prisoners

4

in privately run prisons can bring § 1983 actions against the prison companies and their employees.") (cleaned up).

Here, the Complaint alleges that GEO violated Williams' Eighth Amendment rights by denying his requests for medical care and thereby causing his death (DE 1 ¶¶ 12-21). As a general rule, the Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Rutledge v. Alabama*, 724 F. App'x 731, 735 (11th Cir. 2018). The Complaint does not allege this claim against any individual GEO officer or employee, but instead alleges the claim against GEO itself as an entity. To state a viable claim under § 1983, therefore, the Estate must allege facts sufficient to show (1) that an Eighth Amendment violation took place, and (2) that GEO can be held responsible for the violation under the standards set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

GEO argues the current Complaint fails to allege facts sufficient to show either requirement. As set forth below, the Court agrees.

### 1. The Underlying Eighth Amendment Violation

To establish a § 1983 claim in an Eighth Amendment medical-needs case against an individual prison official, a plaintiff must allege facts that show: (1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between the indifference and the plaintiff's injury. *Rutledge*, 724 F. App'x at 735. A "serious medical need" is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (cleaned up). "Deliberate indifference" requires a plaintiff to allege facts that show the prison official had subjective knowledge of a risk of serious harm, that he or

5

she disregarded that risk, and that he or she acted with more than gross negligence. *Hoffer v. Sec'y, Florida Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020).

The Complaint here fails to allege facts to satisfy these elements. Among other problems:

- The Complaint does not allege the date of Williams' death or even the cause of his death.

- It does not allege when or why Williams went to the hospital or identify the hospital to which he went.

- It does not allege facts that show Williams suffered from a "serious medical need." In this regard, the Complaint makes allegations regarding diabetes, high blood pressure, and "problems" with Williams' foot and insulin medications (DE 1 ¶¶ 1, 14-17). But the Complaint does not identify or describe the nature of the "problems." The Complaint contains no facts showing a medical need that was "diagnosed by a physician as mandating treatment" or that was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," as required by *Farrow*, 320 F.3d at 1243.

- At one point, the Complaint refers to an "amputated" foot (DE 1 ¶ 17). But it remains unclear when the foot was amputated and how the amputation relates to Williams' death.

- The Complaint also fails to allege facts that show "deliberate indifference" to Williams' medical needs. In this regard, the Complaint refers to an informal complaint Williams made on July 5, 2016 regarding "my medication, my foot and other problems" (DE 1 ¶ 15). The Complaint does not identify who received the

6

- informal complaint, nor does it describe the "problems," or explain how these problems relate to Williams' ultimate cause of death.

- The Complaint also refers to an "Inmate Request" Williams made on March 14, 2017, stating "I'm an ADA inmate and need help with my foot and leg conditions. Could someone please help me with this problem?" (DE 1 ¶ 17). Again, the Complaint does not identify who received the request, nor does it describe the nature of the foot and leg conditions, or explain how these problems relate to Williams' ultimate cause of death.

- The Complaint also alleges that Williams' mother requested that GEO take him to the hospital (DE 1 ¶ 18). But it does not explain when she made these requests, to whom she made the requests, or the reasons she believed he needed hospitalization.

- The Complaint alleges that the life-threatening nature of Williams' condition should have been apparent to the staff (DE 1 ¶ 19). But it does not describe the life-threatening condition, nor does it explain why this condition should have been apparent to the staff.

- The Complaint alleges that the delay in getting Williams to the hospital caused his death (DE 1 ¶¶ 20-21). But it does not explain how or when Williams ended up in the hospital, nor does it identify the cause of death, or explain how the delay in hospitalization contributed to the cause of death.

Even when construing all allegations in favor of the Estate, the Complaint fails to set forth facts to state a plausible Eighth Amendment violation. A complaint must do more than make conclusory, boilerplate allegations; it must allege sufficient factual matter to state a claim of relief

that is plausible on its face. *Iqbal*, 556 U.S. at 678. In an Eighth Amendment medical-needs case, moreover, a § 1983 plaintiff must do more than merely allege subpar medical care. *Greene v. Dixon*, No. 3:22-CV-799-BJD-PDB, 2022 WL 4384173, at *2 (M.D. Fla. Sept. 22, 2022). Rather, a plaintiff must allege facts to show a "serious medical need," an individual defendant's "deliberate indifference" to that need, and causation between the indifference and the plaintiff's injury. *Rutledge*, 724 F. App'x at 735. The current Complaint does not meet this standard.

### 2. *Monell* Liability

In addition, because the Estate has chosen to sue GEO itself as an entity, the Estate must do more than merely allege facts showing an underlying Eighth Amendment violation. The Estate must also allege facts sufficient to meet the demanding standards of municipal liability set forth in *Monell*, 436 U.S. at 658. *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (applying *Monell* to a private company that operated as the "functional equivalent of a municipality"). In *Monell,* the Supreme Court recognizing that municipalities qualify as "persons" subject to suit under § 1983. 436 U.S. at 658. To demonstrate liability against a municipality, however, a plaintiff must do more than merely show the municipality employed a person who committed a constitutional violation, as the doctrine of respondeat superior does not apply to § 1983 actions. *Id.* at 691. "[A] city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992).

Instead, the Supreme Court has defined three very narrow circumstances under which a municipality can be held liable under § 1983. First, *Monell* recognizes that § 1983 liability attaches when the municipality itself adopts a formal policy, rule, or regulation that causes constitutional

violations. 436 U.S. at 658. In *Monell*, for example, the municipality adopted a formal policy that required pregnant employees to take unpaid maternity leave before such leave was medically necessary. *Id.* at 660-61. As such, the municipality had adopted a formal policy that served as the "moving force" for a constitutional violation inflicted on its female employees. *Id.* at 694-95.

Second, *Monell* recognizes that municipalities may follow informal customs or practices that cause constitutional violations even though such customs or practices have "not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91 (cleaned up). To prove a custom or practice, a plaintiff must establish a widespread pattern of conduct "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up). As the custom must be widespread and repeated, "random acts or isolated incidents are insufficient to establish a custom[.]" *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018) (noting that, in an excessive force case, "the plaintiff must allege a 'pattern' of excessive force including specific facts of numerous incidents").

Third, the Supreme Court recognizes "limited circumstances" under which "failure to train" can give rise to § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Specifically, inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. To show "deliberate indifference" in a failure to train/supervise case, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and that the municipality made a deliberate choice not to take any action." *Gold*

*v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  The Eleventh Circuit has repeatedly held that, without notice of a need to train or supervise in a particular area, a municipality cannot be liable as a matter of law under a *Monell* failure to train/supervise theory.  *Id.*; *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407-08 (1997) ("In addition, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury.").

In this case, the Complaint fails to allege facts sufficient to demonstrate municipal/entity liability under any recognized theory of *Monell* liability.  The Complaint fails to identify any official policies, or informal customs or practices, or alleged failure on the part of GEO to train or supervise, which caused a constitutional violation to take place.  The Estate cannot hold GEO liable under § 1983 merely because GEO's agents or employees committed Eighth Amendment violations against Williams – even if those violation caused Williams' death.  Instead, the Estate must allege facts sufficient to show the corporate entity itself caused the violations by way of one of the recognized theories of *Monell* liability.  The Complaint here does not meet that demanding standard.

IV.     **RECOMMENDATION & NOTICE OF RIGHT TO OBJECT**

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 25) be **GRANTED.**  Because Plaintiff may be able to plead additional facts to cure these pleading deficiencies, the undersigned further **RECOMMENDS** that Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE** with leave to file an Amended Complaint. **Pending the**

**District Judge's resolution of this Report and Recommendation, Plaintiff may only file an Amended Complaint in full compliance with Fed. R. Civ. P. 15.**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 12th day of January 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE