UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-81157-Damian/McCabe

ESSIE MAE WILLIAMS,
as Personal Representative of the Estate of
Cedric Levon Williams,

    Plaintiff,

v.

THE GEO GROUP, INC.,

    Defendant.
_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss the Amended Complaint ("Motion"), which was referred to the undersigned by United States District Judge Melissa Damian. (DE 42, DE 44). The Court held a hearing on the Motion on May 1, 2024. (DE 60). By previous order, the District Court dismissed an initial version of the complaint in this case, but allowed Plaintiff leave to file an amended complaint to attempt to cure pleading deficiencies. (DE 39, DE 40).[1] For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED** and that the Amended Complaint by **DISMISSED WITHOUT PREJUDICE** with one more chance to cure pleading deficiencies.

---

[1] United States District Judge Aileen M. Cannon was the presiding District Judge at the time the initial complaint was dismissed. This case has since been reassigned to United States District Judge Melissa Damian. (DE 43).

I.  **BACKGROUND**

This is a civil rights case brought by the personal representative of the Estate of Cedric Levon Williams (the "Estate"), arising from Williams' death while incarcerated as an inmate in the Florida prison system. According to the Amended Complaint, Williams served his term of incarceration at the South Bay Corrections Center, a private facility operated by GEO pursuant to a contract with the State of Florida. (DE 41 ¶¶ 7, 23).

The Estate alleges that Williams suffered from high blood pressure and diabetes during the time he was incarcerated at GEO's facility. (DE 41 ¶ 14). The Estate further alleges that GEO denied Williams' repeated requests for medical care including the following:

| | |
|---|---|
| June 5, 2016 | Williams submitted an Inmate Request complaining that he was required to take blood pressure medication and insulin, that he had not received his medications, that he couldn't seem to see the doctor about his medications or his foot, and that he was worried his problems would get worse. (DE 41 ¶ 16, DE 41-2 at 5) |
| Unknown Date | Williams' left foot was amputated. (DE 41 ¶ 17). |
| March 14, 2017 | Williams submitted an Inmate Request complaining that physical therapy had been recommended for his remaining foot but that he had not yet received the therapy. (DE 41 ¶ 18, DE 41-2 at 3). |
| March 15, 2017 | Williams submitted another Inmate Request complaining that he had been given a prosthetic device that did not fit properly for his amputated foot, that he needed medical assistance to make the prosthetic device fit properly, that a toe on his remaining foot was growing sideways, and that the skin on |

|  |  |
|---|---|
|  | his remaining foot was turning a different color. (DE 41 ¶ 25, DE 41-2 at 4). |
| Unknown Dates | Williams' mother attempted to contact GEO to have its wardens tend to Williams' medical complaints. (DE 41 ¶ 20). |
| April 13, 2022 | Williams filed a Formal Grievance related to his medical treatment. The Amended Complaint does not describe the exact content of the grievance but attaches a one-page confirmation that GEO received a formal grievance from Williams related to "07 (MEDICAL)." (DE 41-2 at 1). |

Approximately one month following Williams' Formal Grievance, on May 15, 2022, Williams died at the JFK Medical Center from a myocardial infarction. (DE 41 ¶ 23). The Estate blames Williams' death on GEO's deliberate indifference to his medical needs and delay in affording him medical care. (DE 41 ¶¶ 21-25). The Amended Complaint provides very little detail as to Williams' exact medical condition in the months leading up to his death or how the myocardial infarction may have been related to his prior medical problems. The Amended Complaint alleges three counts:

| Count 1 | Violation of 42 U.S.C. § 1983 |
|---|---|
| Count 2 | Violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") |
| Count 3 | Negligence |

(DE 41).

## II. LEGAL STANDARD

By way of this Motion, GEO seeks dismissal of all three counts with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). (DE 42). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

The Court will address each of the Estate's three counts in turn.

### A.   Count 1 - 42 U.S.C. § 1983

Count 1 of the Amended Complaint alleges a claim pursuant to 42 U.S.C. § 1983, which provides a remedy against "every person" who, under color of state law, deprives another of rights secured by the Constitution and laws of the United States. (DE 41 ¶¶ 13-25). When a private company like GEO contracts with the state to perform a function traditionally performed by the state, the private company acts under color of state law within the meaning of § 1983. *See Brown v. GEO Group*, No. 18-80026-CV, 2019 WL 13410738, at *5 (S.D. Fla. Aug. 28, 2019), *R. & R. adopted*, 2019 WL 13410737 (S.D. Fla. Oct. 2, 2019) ("The law is well established that prisoners

4

in privately run prisons can bring § 1983 actions against the prison companies and their employees.") (cleaned up).

Here, the Amended Complaint alleges that GEO violated Williams' Eighth Amendment rights by denying his requests for medical care and thereby causing his death. (DE 41 ¶¶ 13-25). Because the Estate has chosen to sue GEO itself rather than the individual agents or employes of GEO, the Estate must satisfy the standard for entity-level § 1983 liability set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). This requires the Estate to plead facts to show (1) that an underlying Eighth Amendment violation took place, and (2) that GEO can be held responsible for the violation under the standards set forth in *Monell*, 436 U.S. at 658.

GEO argues the Amended Complaint fails to allege sufficient facts to satisfy either prong. As set forth below, the Court agrees.

        1.        **The Underlying Eighth Amendment Violation**

To establish a § 1983 claim in an Eighth Amendment medical-needs case, a plaintiff must allege facts to show (1) a serious medical need, (2) the defendant's deliberate indifference to that need, and (3) causation between the indifference and the plaintiff's injury. *Rutledge v. Alabama*, 724 F. App'x 731, 735 (11th Cir. 2018). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (cleaned up). "Deliberate indifference" requires a plaintiff to allege facts that show prison officials had subjective knowledge of a risk of serious harm, that they disregarded that risk, and that they acted with more than gross negligence. *Hoffer v. Sec'y, Florida Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020).

In dismissing the initial complaint, the Court pointed out numerous problems with the Estate's effort to plead an Eighth Amendment medical-needs violation. (DE 39, DE 40). After careful review, Court finds that the Amended Complaint continues to suffer from the same problems. Above all, the Estate fails to "connect the dots" between Williams' myocardial infarction (a heart attack) at the hospital and any conduct or misconduct by GEO. Among other unanswered questions:

- The Estate alleges that Williams suffered from diabetes, high blood pressure, and an amputated foot (DE 41 ¶¶ 14, 17), but it remains unclear how or why these medical conditions contributed to his subsequent myocardial infarction in 2022.

- The Estate alleges that Williams made multiple requests for medical assistance in 2016 and 2017 (DE 41 ¶¶ 16, 18, 26, 28), but it remains unclear how these requests related to his myocardial infarction years later in 2022.

- The Estate alleges that Williams' mother complained to GEO wardens about Williams' medical condition (DE 41 ¶ 20), but the Estate does not explain the dates or precise topics of these complaints. It remains unclear how these complaints related to the myocardial infarction.

- The Estate also refers to a medical grievance that Williams submitted the month before he died, but the Estate does not explain the topic of the grievance other than the broad label "medical." (DE 41-2 at 1). It remains unclear how this grievance related to Williams' subsequent myocardial infarction.

- The Estate does not even explain why GEO officials took Williams to the hospital in the first place. What was the medical condition that caused him to go to the

hospital? Was it related to high blood pressure, diabetes, or the amputated foot? Was it related to any of his prior medical requests or grievances? What caused the myocardial infarction at the hospital? These questions remain unanswered.

Even when construing the allegations in the light most favorable to the Estate, the Amended Complaint fails to set forth facts to state a plausible Eighth Amendment violation. A complaint must do more than make conclusory, boilerplate allegations; it must allege sufficient factual matter to state a claim of relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. In an Eighth Amendment medical-needs case, moreover, a § 1983 plaintiff must do more than merely allege subpar medical care. *Greene v. Dixon*, No. 3:22-CV-799-BJD-PDB, 2022 WL 4384173, at *2 (M.D. Fla. Sept. 22, 2022). Rather, a plaintiff must allege facts to show a "serious medical need," a "deliberate indifference" to that need, and causation between the indifference and the injury. *Rutledge*, 724 F. App'x at 735. The Amended Complaint here, like the initial complaint before, does not meet this standard. Indeed, even after reviewing the Amended Complaint multiple times, the Court cannot determine why Williams suffered a myocardial infarction and how or why GEO's conduct or misconduct may have contributed to his death.

### 2. *Monell* Liability

In addition, because the Estate has chosen to sue GEO itself, the Estate must do more than allege facts showing an underlying Eighth Amendment violation. The Estate must also allege facts sufficient to meet the demanding standards for municipal liability set forth in *Monell*, 436 U.S. at 658. *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (applying *Monell* to a private company that operated as the "functional equivalent of a municipality"). In *Monell,* the Supreme Court recognized that municipalities qualify as "persons" subject to suit under § 1983. 436 U.S.

7

at 658. To demonstrate liability against a municipality, however, a plaintiff must do more than show that the municipality employed a person who committed a constitutional violation, as the doctrine of respondeat superior does not apply to § 1983 actions. *Id.* at 691. "[A] city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992).

The Supreme Court has defined three narrow circumstances under which a municipality can be held liable under § 1983. First, *Monell* recognizes that § 1983 liability attaches when the municipality itself adopts a formal policy, rule, or regulation that causes constitutional violations. 436 U.S. at 658. Second, *Monell* recognizes that municipalities may follow informal customs or practices that cause constitutional violations even though such customs or practices have "not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91 (cleaned up). To prove a custom or practice, a plaintiff must establish a widespread pattern of conduct "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up). Third, the Supreme Court recognizes "limited circumstances" under which "failure to train" can give rise to § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Specifically, inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388.

In this case, the Amended Complaint attempts to proceed under the "informal practice or custom" theory. The Estate alleges that, in 2018, the "Correctional Medical Authority" performed

a records review of the GEO facility that housed Williams and concluded that eight of the sixteen inmates whose records were reviewed "were not seen according to their medical grade status." (DE 41 ¶ 19). The Estate argues this demonstrates that GEO had an informal practice or custom of providing care below an inmate's "medical grade status." The Estate further argues that this informal practice or custom caused the Eighth Amendment violation at issue in this case and Williams' resulting death.

The Court finds these allegations insufficient to demonstrate *Monell* liability under the informal custom and practice theory. Among other problems, the Estate does not explain the role of the "Correctional Medical Authority," nor does it explain the significance of the "medical grade status" terminology apparently utilized by the Department of Corrections to classify inmates. Most significantly, the Amended Complaint does not explain how GEO's failure to deliver care according to inmates' medical grade status caused Williams to suffer a myocardial infarction at the hospital in 2022. Count 1 should be dismissed for this reason as well.

B.  **Count 2 – ADA & Rehabilitation Act**

Count 2 alleges a violation of the ADA and the Rehabilitation Act. (DE 41 ¶¶ 26-27). GEO's Motion urges dismissal of Count 2 on multiple grounds. (DE 42 at 15-17). In response, the Estate failed to raise any arguments to oppose dismissal of this count. A "party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (cleaned up). At oral argument,

9

the Estate's counsel likewise conceded he had no arguments in opposition to the dismissal of Count 2. Accordingly, Count 2 should be dismissed.[2]

### C. Count 3 – Negligence

Count 3 alleges negligence for failing to provide and/or delaying medical attention to Williams. (DE 41 ¶¶ 28-30). GEO argues that Count 3 should be dismissed for two reasons: (1) failure to plead compliance with the pre-suit requirements of Florida's Medical Malpractice Act, Fla. Stat. § 766.102, and (2) failure to plead the necessary elements of a common law negligence claim. As set forth below, the Court agrees.

#### 1. Pre-Suit Requirements

Florida law imposes a number of pre-suit requirements on claims for medical negligence. For purposes of these requirements, a "claim for medical negligence" means "a claim, arising out of the rendering of, or the failure to render, medical care or services." Fla. Stat. § 766.106(1)(a). Among other pre-suit requirements, a plaintiff wishing to bring a medical negligence claim in Florida must conduct a pre-suit investigation of the claim, obtain a corroborating expert opinion, and provide pre-suit notice to the prospective defendant. Fla. Stat. §§ 766.106(2), 766.203(2); *see also Kukral v. Mekras*, 679 So. 2d 278, 280 (Fla. 1996) (discussing the "complex" procedures that must be followed before a medical negligence claim may be brought in Florida).

---

[2] Even without the Estate's lack of opposition, the Court would have recommended dismissal of Count 2. Among other problems, "the ADA is not a remedy for medical malpractice and would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." *Jones v. Rutherford*, 546 F. App'x 808, 811–12 (11th Cir. 2013). Also, private entities like GEO cannot be sued under Title II of the ADA. *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) ("Since GEO is such a private corporation, we hold that GEO is not a public entity subjecting it to liability under Title II of the ADA and is, therefore, not a proper defendant in this action.").

The Florida legislature enacted these pre-suit requirements to promote the settlement of claims and prevent the filing of baseless lawsuits. *Fort Walton Beach Med. Ctr., Inc. v. Dingler*, 697 So. 2d 575, 579 (Fla. 1st DCA 1997). The pre-suit requirements apply to incarcerated plaintiffs. *O'Hanrahan v. Moore*, 731 So. 2d 95, 96 (Fla. 4th DCA 1999) (affirming dismissal of inmate claim for medical negligence based on failure to comply with statutory pre-suit requirements). They also apply to medical negligence claims brought in federal courts. *See, e.g.*, *Aiken v. United States*, No. 16-24150-CIV, 2018 WL 11651187, at *13 (S.D. Fla. Feb. 5, 2018), *R. & R. adopted,* 2018 WL 11651182 (S.D. Fla. May 24, 2018).

In this case, the Amended Complaint fails to allege compliance with Florida's statutory pre-suit requirements, nor does it allege satisfaction of conditions precedent of any kind. As such, the Amended Complaint should be dismissed on this basis.

At the hearing on this matter, the Estate's counsel argued that the statutory pre-suit requirements do not apply because Count 3 alleges simple negligence, not medical negligence or medical malpractice. The Court has carefully reviewed the Amended Complaint and cannot agree. Count 3 alleges as follows:

> The State of Florida, which [GEO] represents, is responsible for providing inmates with constitutional standard of care when they are admitted to the Departments institutions…. *This includes comprehensive medical, mental health and dental services and all associated ancillary services.*
>
> (28) [GEO] at all times pertinent was responsible for the safety and care of its inmates of which [Williams] was one. [Williams] made several attempts, as evidenced by the enclosed 'inmate request' [related to medical care] forms, begging to be attended to but to no avail.
>
> (29) [GEO] breached the duty it owed [Williams] *when he was not given the medical attention in a timely manner.*

(DE 41, Count 3) (emphasis added).

11

In the Courts view, these allegations fall squarely within Florida's statutory definition of a "claim for medical negligence," i.e., "a claim, arising out of the rendering of, *or the failure to render*, medical care or services." Fla. Stat. § 766.106(1)(a) (emphasis added). As such, the Estate has failed to allege satisfaction of a necessary condition precedent to bringing suit, and Count 3 should be dismissed on this basis.

### 2. Negligence Elements

In addition, the Court finds that Count 3 fails to plead a plausible claim of negligence under Florida law. To state a negligence claim under Florida law, a plaintiff must allege facts showing (1) duty, (2) breach of duty, (3) a causal connection between the conduct and the resulting injury, and (4) actual loss or damage. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). For the same reasons previously identified in section III.A.1 above, the Court finds the Estate has not alleged sufficient facts to state a plausible negligence claim against GEO. That is, the Estate fails to "connect the dots" between Williams' myocardial infarction and any conduct or misconduct committed by GEO. The current allegations remain unclear as to why Williams was taken to the hospital in 2022 and whether his subsequent myocardial infarction bore any relation to his high blood pressure, diabetes, amputated foot, or any of his prior requests for medical services or grievances. In sum, the Amended Complaint does not explain how or why GEO's conduct caused Williams to suffer a myocardial infarction at the hospital. The Estate must connect these dots in order to state a plausible claim. Count 3 should be dismissed for this reason as well.

## IV. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 42) be **GRANTED**. Given the serious nature of this case, the undersigned further **RECOMMENDS**

**DISMISSAL WITHOUT PREJUDICE**, such that the Estate be afforded one further opportunity to attempt to state plausible claims by way of a Second Amended Complaint.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Melissa Damian.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 3rd day of May 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE