UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-81157-Damian/McCabe

ESSIE MAE WILLIAMS,
as Personal Representative of the Estate of
Cedric Levon Williams,

    Plaintiff,

v.

THE GEO GROUP, INC.,

    Defendant.
_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss the Second Amended Complaint ("Motion"), which was referred to the undersigned by United States District Judge Melissa Damian. (DE 85, DE 86). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED** and that the Second Amended Complaint ("SAC") be **DISMISSED WITH PREJUDICE**.

### I.    OVERVIEW

This is a civil rights case brought by the personal representative of the Estate of Cedric Levon Williams (the "Estate"), arising from Williams' death while incarcerated as an inmate in the Florida prison system. The current complaint (DE 82) represents the Estate's third effort to plead viable claims in this case. By previous orders, the District Judge[1] dismissed two earlier

---

[1] United States District Judge Aileen M. Cannon was the presiding District Judge at the time the initial complaint was dismissed. This case has since been reassigned to United States District Judge Melissa Damian. (DE 43).

versions of the complaint, each time allowing leave to amend to cure pleading deficiencies. (DE 40, DE 68). All the while, the Estate's counsel reported that he was gathering documents via discovery in an effort to plead the facts necessary to survive dismissal. (DE 26 at 3-4, DE 47 at 7-8). In the most recent order of dismissal, the District Judge warned that no further amendments would be allowed. (DE 68 at 3).

## II. FACTS

The Court accepts the following facts as true, taken from the SAC. Prior to his death, Williams was serving a term of incarceration at the South Bay Corrections Center. (DE 82 ¶ 7). The Geo Group, Inc. ("GEO"), a private facility, operates the South Bay Corrections Center pursuant to a contract with the State of Florida. (DE 82 ¶ 7). During his time of incarceration, Williams suffered from high blood pressure and diabetes. (DE 82 ¶ 13). On April 12, 2022, Williams complained of "shortness of breath with severe productive cough," as well as "chest pain with abdominal discomfort." (DE 82 ¶ 17). He also expressed "concern that his condition was getting worse not better." (DE 82 ¶ 17). According to the SAC, Williams was "ignored despite the emergency situation." (DE 82 ¶ 17).

Sixteen days later, on April 28, 2022, "it was reported that [Williams'] medical condition worsened." (DE 82 ¶ 19). The SAC does not specify who made this report or to whom it was made. According to the SAC, Williams "suffered shortness of breath on exertion and feeling tired progressively." (DE 82 ¶ 19). The same day, prison officials transported Williams to Palms West Hospital. (DE 82 ¶ 19). At the hospital, Williams exhibited "shortness of breath that rapidly progressed to a significant functional limitation," as well as "orthopnea." (DE 82 ¶ 19).

Ten days later, on May 7, 2022, Williams was transferred from Palms West Hospital to JFK Medical Center. (DE 82 ¶ 20). The SAC does not explain the reasons for the transfer. Eight days later, on May 15, 2022, Williams passed away at JFK Medical Center from a myocardial infarction (a heart attack). (DE 82 ¶ 20).

Based on the above events, the Estate alleges a claim against GEO for deliberate indifference to Williams' serious medical needs in violation of the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983. The Estate alleges that "[h]ad Mr. Williams been taken to the hospital promptly when he complained [on April 12, 2022], his life would have been saved." (DE 82 ¶ 19).

### III.    LEGAL STANDARD

By way of this Motion, GEO seeks dismissal of the SAC with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). (DE 85). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV. DISCUSSION

The SAC alleges a claim pursuant to 42 U.S.C. § 1983, which provides a remedy against "every person" who, under color of state law, deprives another of rights secured by the Constitution and laws of the United States. (DE 82 ¶¶ 13-21). When a private company like GEO contracts with the state to perform a function traditionally performed by the state, the private company acts under color of state law within the meaning of § 1983. *See Brown v. GEO Group*, No. 18-80026-CV, 2019 WL 13410738, at *5 (S.D. Fla. Aug. 28, 2019), *R. & R. adopted*, 2019 WL 13410737 (S.D. Fla. Oct. 2, 2019) ("The law is well established that prisoners in privately run prisons can bring § 1983 actions against the prison companies and their employees.") (cleaned up).

Here, the SAC alleges that GEO violated Williams' Eighth and Fourteenth Amendment rights by failing to provide him with timely medical care, thereby causing his death. (DE 82 ¶¶ 13-21). Because the Estate has chosen to sue GEO itself rather than the individual agents or employees of GEO, the Estate must satisfy the standard for entity-level § 1983 liability set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). This requires the Estate to plead facts to show (1) that an underlying Eighth Amendment violation took place, and (2) that GEO can be held responsible for the violation under the standards set forth in *Monell*.

GEO argues that the SAC fails to allege sufficient facts to satisfy either prong. As set forth below, the Court agrees.

### A. The Underlying Eighth Amendment Violation

To establish a § 1983 claim in an Eighth Amendment medical-needs case, a plaintiff must allege facts to show (1) a serious medical need, (2) the defendant's deliberate indifference to that

need, and (3) causation between the indifference and the plaintiff's injury. *Rutledge v. Alabama*, 724 F. App'x 731, 735 (11th Cir. 2018). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (cleaned up). "Deliberate indifference" requires a plaintiff to allege facts that show prison officials had subjective knowledge of a risk of serious harm, that they disregarded that risk, and that they acted with more than gross negligence. *Hoffer v. Sec'y, Florida Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020).

When a plaintiff attempts to bring an Eighth Amendment claim based on delay in receiving medical treatment, the plaintiff must show that the delay exacerbated the injury or unnecessarily prolonged the plaintiff's pain. *See Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1235 (11th Cir. 2010). In evaluating a delay claim, courts look to several factors including the nature of the medical need, the reason for the delay, and the effect of the delay on the prisoner's medical condition. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). The delay must amount to more than mere negligence, as "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).

Turning to the allegations here, the Court finds the Estate once again fails to plead facts that show plausible Eighth or Fourteenth Amendment violations. Most notably, the SAC makes clear that Williams spent the last eighteen days of his life under hospital care, first at Palms West Hospital and then at JFK Medical Center. (DE 82 ¶ 20). In the Court's view, the SAC fails to "connect the dots" between Williams' death (after eighteen days in the hospital) and any action

or inaction by GEO. Indeed, the SAC offers only a single sentence to support causation, alleging that "[h]ad Mr. Williams been taken to the hospital promptly when he complained [on April 12, 2022], his life would have been saved." (DE 82 ¶ 19). But the SAC offers no additional facts or circumstances to make this allegation plausible. A complaint must do more than make conclusory, boilerplate allegations; it must allege sufficient factual matter to state a claim of relief that is plausible on its face. *Iqbal*, 556 U.S. at 678.

Here, the SAC's allegations leave more questions than answers as to the nature of Williams' medical needs, GEO's alleged deliberate indifference towards them, and the reasons for Williams' death. Among other problems:

- The SAC alleges that Williams suffered from diabetes and high blood pressure, (DE 82 ¶ 13), but it remains unclear if, how, or why these conditions contributed to his death.

- The SAC alleges that Williams complained about his medical condition on April 12, 2022 (DE 82 ¶ 17), but it remains unclear who received this complaint or whether Williams made additional complaints after April 12, 2022.

- In fact, the SAC is completely silent as to what happened between April 12, 2022 and April 28, 2022.[2]

---

[2] GEO has moved for sanctions against the Estate, arguing that the SAC's silence concerning this time period warrants the imposition of sanctions. (DE 91). Specifically, GEO claims it has produced records to the Estate showing that, from April 12, 2022 to April 28, 2022, Williams received medical care from GEO eleven times, including an X-ray, lab work, and multiple visits with doctors and nurses. (DE 91 at 2-6). In deciding the instant Motion, the Court has restricted its analysis solely to the sufficiency of the allegations set forth in the SAC. The Court has not considered the arguments set forth in GEO's sanctions motion or the truth or falsity of the claims made there.

- On April 28, 2022, the SAC alleges that, "it was reported that [Williams'] medical condition worsened." (DE 82 ¶ 19). It remains unclear who made this report, who received this report, and exactly how Williams' medical condition had worsened.

- The SAC further alleges that Williams was transported to Palms West Hospital on April 28, 2022, but it remains unclear why the transport decision was made, apart from an allegation that Williams had "shortness of breath on exertion and feeling tired progressively." (DE 82 ¶ 19).

- Nine days later, on May 7, 2022, Williams was transferred from Palms West Hospital to JFK Medical Center. (DE 82 ¶ 20). Again, the SAC does not explain the reasons for the transfer.

- Eight days later, on May 15, 2022, Williams passed away at JFK Medical Center from a myocardial infarction (a heart attack). (DE 82 ¶ 20). Again, the SAC does not explain the reasons for the heart attack, nor does it contain facts to show a plausible causal link between the heart attack and any action or inaction of GEO.

In an Eighth Amendment medical-needs case, a § 1983 plaintiff must do more than allege facts showing subpar medical care. *Greene v. Dixon*, No. 3:22-CV-799-BJD-PDB, 2022 WL 4384173, at *2 (M.D. Fla. Sept. 22, 2022). Rather, a plaintiff must allege facts to show a "serious medical need," a "deliberate indifference" to that need, and causation between the indifference and the injury. *Rutledge*, 724 F. App'x at 735. The SAC here, like the prior complaints before it, does not meet this standard. As such, the SAC must be dismissed.

B.     *Monell* Liability

In addition, because the Estate has chosen to sue GEO itself, the Estate must do more than show an underlying Eighth Amendment violation. The Estate must also allege facts sufficient to meet the demanding standard for municipal liability set forth in *Monell*, 436 U.S. at 658. *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (applying *Monell* to a private company that operated as the "functional equivalent of a municipality"). In *Monell*, the Supreme Court recognized that municipalities qualify as "persons" subject to suit under § 1983. 436 U.S. at 658. To demonstrate liability against a municipality, however, a plaintiff must do more than show that the municipality employed a person who committed a constitutional violation, as the doctrine of respondeat superior does not apply to § 1983 actions. *Id.* at 691. "[A] city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992).

The Supreme Court has defined three very narrow circumstances under which a municipality can be held liable under § 1983. First, *Monell* recognizes § 1983 liability when the municipality itself adopts a formal policy, rule, or regulation that causes constitutional violations. 436 U.S. at 658. Second, *Monell* recognizes that municipalities may follow informal customs or practices that cause constitutional violations even though such customs or practices have "not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91 (cleaned up). To prove a custom or practice, a plaintiff must establish a widespread pattern of conduct "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up).

8

Third, the Supreme Court recognizes "limited circumstances" under which "failure to train" can give rise to § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Specifically, inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388.

In this case, the SAC attempts to proceed under the "informal custom or practice" theory. The Estate alleges that, in 2018, the "Correctional Medical Authority" performed a records review of the South Bay Corrections Center and concluded that eight of the sixteen records reviewed showed that inmates "were not seen according to their medical grade status." (DE 82 ¶ 15). The Estate alleges this demonstrates an informal custom or practice of providing "lackadaisical treatment of inmates with serious medical needs by permitting and tolerating situations of such to exist." (DE 82 ¶ 15). The Estate further alleges that this informal custom or practice caused the Eighth Amendment violation at issue in this case, resulting in Williams' death. (DE 82 ¶ 16).

The Court has reviewed the allegations of the SAC and finds them insufficient to demonstrate *Monell* liability for at least three reasons. First, the Estate does not explain the role of the "Correctional Medical Authority" or the meaning of the term "medical grade status." It remains unclear how these concepts relate to potential Eighth Amendment violations.

Next, even assuming these allegations could be interpreted to mean that GEO has a custom or practice of delivering subpar medical care, this would be insufficient to show an Eighth Amendment violation. As previously noted, mere delivery of subpar medical care does not violate the Eighth Amendment. *See Hoffer*, 973 F.3d at 1270 (noting that deliberate

indifference requires a plaintiff to allege facts that show prison officials "acted with more than gross negligence").

Third and finally, the SAC fails to allege facts to connect Williams' death to GEO's alleged custom or practice of failing to see inmates according to their medical grade status. For instance, the SAC does not identify Williams' medical grade status or explain the type of care he should have received based on that status. Most importantly, the SAC does not explain – with sufficient, plausible detail – how Williams' death would have been prevented if he had been seen according to his medical grade status. In short, the SAC does not meet the demanding standard for entity-level liability set forth in *Monell*.

## V.     RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 85) be **GRANTED**. Given that Plaintiff was afforded leave to amend on two other occasions, the undersigned further **RECOMMENDS** dismissal **WITH PREJUDICE** of the Second Amended Complaint.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Melissa Damian. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 10th day of September 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE